# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

MICHAEL R. COMANDELLA,      )
      Plaintiff,             )
                       )
      v.                   )       CAUSE NO.: 2:17-CV-370-JEM
                       )
TOWN OF MUNSTER, *et al*.,     )
      Defendants.         )

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 50], filed on August 28, 2019. For the following reasons, the motion is granted in part and denied in part.

## I.    Procedural Background

On September 20, 2017, Plaintiff Michael R. Comandella filed a Complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants Brian Ayersman, Joseph Wells, and other unnamed officers falsely arrested him without probable cause, and used excessive force in their arrest. Plaintiff also claimed that Defendant Town of Munster was liable for the officers' actions based on a theory of *respondeat superior*, and that the Town was negligent in hiring and training the officers. On August 28, 2019, Defendants filed a Motion for Summary Judgment. Plaintiff filed a response on September 26, 2019, and on October 9, 2019, Defendants filed a reply.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## II.    Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find" for the non-movant. *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id*. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107,

110-111 (7th Cir. 1990) (citations omitted).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Liberty Lobby*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009). A court's role is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50.

## III. Material Facts[1]

On the morning of September 21, 2015, Plaintiff Michael Comandella and his friend, Destiny Sabo, got into an argument at the home of Plaintiff's mother, Diane Comandella. After arguing for

---

[1] The facts herein are undisputed unless otherwise indicated. Where there are material disagreements, the Court describes the facts contended by Plaintiff, the non-movant.

fifteen minutes, Plaintiff drove away from the home. Beginning at 10:20 a.m, while Plaintiff was driving, Plaintiff and Sabo communicated via text message. During the text exchange, Plaintiff repeatedly threatened suicide. *See* Motion Ex. B at 14-35 [DE 52] ("I'm gone to dispose [of] myself" . . . "I don't want to be alive . . . I'm done. I'm over it. I'm giving up."). Plaintiff threatened to kill himself by getting into a collision on the Dan Ryan Expressway. *Id.* at 18 ("You can't meet me. I'm not gonna be there. The Dan Ryan had the most accidents of any of the highways here. . . . That's my end. Last stop" . . . "I'm at peace with it . . . [I'm] sorry your last memory is this."). Believing Plaintiff to be suicidal, Sabo showed Plaintiff's text messages to the Indiana State Police and the Munster Police Department. An Indiana State Police Officer texted Plaintiff and asked if he would meet with a state trooper. Plaintiff responded that he was fine and did not want to meet with the state trooper. Defendant Brian Ayersman, a Munster police officer, reviewed Plaintiff's text exchanges with Sabo and completed a missing persons report, with assistance from Sabo and Plaintiff's mother.

Around 2:30 p.m., Plaintiff agreed to meet Sabo at a nearby park. Sabo and Plaintiff's mother agreed that, when Sabo met Plaintiff, Sabo would text Plaintiff's mother, who would then call the Munster Police Department. Although Sabo testified that the plan was to call the police "so that they could go and do a check on him," Sabo Dep. 36:8-13 [DE 52], Plaintiff maintains that the police were called to inform them of his location so they would know he had been found. After receiving the call from Plaintiff's mother, numerous officers from the Munster Police Department went to the park, including Ayersman. Ayersman had decided before coming into contact with Plaintiff to take him into custody. Ayersman Dep. 25:637-649 [DE 56-3].

When the police arrived at the park, Sabo had her arm wrapped around Plaintiff's arm, because she did not know how he would react to the arrival of the police. Sabo Dep. 37:1-9 [DE 52].

Plaintiff maintains that he was physically separated from Sabo with no verbal instruction from any officer. Michael Comandella Dep. 57:1-12 [DE 56-1]. Defendants maintain that Ayersman asked Plaintiff to step away from Sabo and told Plaintiff that he would be committed to a hospital for evaluation, but Plaintiff refused and walked away. *See* Motion Ex. F at 3 (September 21, 2015 Police Report) [DE 52].

With Plaintiff and Sabo separated, Ayersman tried to apprehend Plaintiff. Plaintiff resisted by attempting to remove Ayersman's hands from his body. Michael Comandella Dep. 54:4-16 [DE 52]. After Plaintiff's initial resistance, Ayersman and Wells moved Plaintiff to the ground. Plaintiff alleges that Ayersman and another officer, Defendant Joseph Wells, pinned him against a squad car, that Wells "disabled" his left leg by hitting his left kneecap, and that Plaintiff fell face first onto the ground. Michael Comandella Dep. 52:22-53:4, 55:1-56:17, 58:20-22 [DE 56-1]. The officers then asked Plaintiff to show them his hands, but Plaintiff refused. With Plaintiff still on the ground, Wells shot Plaintiff in the back with a Taser, and Plaintiff was handcuffed and placed in a squad car. Plaintiff alleges that he sustained a torn ligament and torn cartilage in his left knee, requiring two surgeries and physical therapy, in addition to burns from being tased, along with various cuts and scrapes.

## IV. Analysis

Defendants move for summary judgment on Plaintiff's claims of false arrest (Count I) and arrest with excessive force (Count II) arising under 42 U.S.C. § 1983. Defendants argue that Ayersman and Wells are entitled to summary judgment both counts because they had probable cause to make the arrest, the force used was justified, and they are entitled to qualified immunity. Finally, Defendants seek summary judgment against Defendant Town of Munster arguing that it cannot be

held liable on theories of *respondeat superior* or negligent hiring or training.

      A.      <u>False Arrest</u>

The existence of probable cause is an absolute defense to a claim of false arrest. *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 679–80 (7th Cir.2007). A police officer has probable cause to arrest when "at the moment the decision is made, the facts and circumstances within her knowledge and of which she has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Fleming v. Livingston Cty., Ill.*, 674 F.3d 874, 878–79 (7th Cir. 2012). The inquiry is purely objective; the officer's subjective state of mind and beliefs are irrelevant. *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 714 (7th Cir. 2013) (citations omitted). However, the Court must view the facts not "'as an omniscient observer would perceive them but . . . as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard.'" *Id.* (quoting *Carmichael v. Vill. of Palatine, Ill.*, 605 F.3d 451, 457 (7th Cir. 2010)).

Defendants argue that the officers had probable cause to arrest Plaintiff because he had repeatedly threatened to commit suicide, and the officers' contacts with Sabo and Plaintiff's mother confirmed the seriousness of the threat. Plaintiff argues that there was no threat of danger at the time the arrest was made. The Court agrees that, resolving all inferences in Plaintiff's favor, Defendants have not shown that there was probable cause to arrest him. Although Plaintiff repeatedly threatened suicide to Sabo in the morning, the situation had changed by the time the police arrived in the afternoon. Plaintiff and Sabo were together in the park, with their arms linked, and there was no indication that any danger or attempt of suicide was imminent in the park. Although Defendants view the officers' interactions with Sabo and Plaintiff's mother as confirming the threat, a

reasonable jury could disagree. Plaintiff's mother testified that although she participated in the

missing persons report, she told police that Plaintiff was not a danger to himself, and she ultimately

called the police "to let them know that he was safe, and I knew where he was, and I was going over

there." Diane Comandella Dep. 61:2-7 [DE 56-2]. Sabo initially told officers that Plaintiff was

suicidal, but testified that she agreed to involve the police at the park "so that they could go and do

a check on him." Once at the park, there is no allegation that Sabo thought danger was imminent,

only that she thought Plaintiff should be checked on. A reasonable jury could conclude that Plaintiff

was not going to kill himself once he got to the park. Resolving all inferences in Plaintiff's favor,

there would be a triable issue of fact as to whether Defendants had probable cause to arrest him

when they did.

However, Defendants Ayersman and Wells are entitled to qualified immunity on the false

arrest claim. "[P]ublic officials performing discretionary functions are protected against suits for

damages unless their conduct violates clearly established statutory or constitutional rights of which

a reasonable person would have known." *Maxwell v. City of Indianapolis*, 998 F.2d 431, 435 (7th

Cir. 1993) (citing *Doe v. Bobbitt*, 881 F.2d 510, 511 (7th Cir. 1989)). A defendant is entitled to

qualified immunity in a false-arrest case when, even if there is no probable cause, "a reasonable

officer could have mistakenly believed that probable cause existed." *Fleming*, 674 F.3d at 880. In

this case, a reasonable officer could have believed that Plaintiff would try to kill himself.

As an initial matter, the fact that Plaintiff was no longer threatening suicide by the time he

arrived in the park does not mean that a reasonable officer would not have arrested him.[2] *See, e.g.,*

---

[2] In his response, Plaintiff "disputes that he would have been unwilling" to undergo a psychiatric evaluation, implying
that this made the arrest unnecessary. However, the only evidence Plaintiff provides on this point is his testimony that
the officers separated him from Sabo without any verbal instruction. Defendants, citing the police's incident report, state
that Plaintiff refused to be taken to the hospital. Plaintiff has not established a genuine dispute that he would have gone

*Fitzgerald v. Santoro*, 707 F.3d 725, 733 (7th Cir. 2013) (holding that probable cause for arrest existed where a person denied she was suicidal despite prior threats); *Bloom v. Palos Heights Police Dep't*, 840 F. Supp. 2d 1059, 1068 (N.D. Ill. 2012) (finding probable cause to arrest a minor based on her mother's report that she was suicidal, even though the police found "no signs of disturbance" at her home and the minor said she was not suicidal). "Police officers should not be forced . . . to wait for a mentally unstable person to carry out threats before intervening." *Dunne v. Reda*, No. 12 C 872, 2013 WL 617077, at *4 (N.D. Ill. Feb. 19, 2013) (quoting *Sherman v. Four Cty. Counseling Ctr.*, 987 F.2d 397, 402 (7th Cir. 1993)); *see also Bloom*, 840 F. Supp. 2d at 1069 ("Consider for a moment the possible consequences of the Officers acting solely on their own lay opinions and leaving the scene. Had S.B. actually been suicidal, such conduct by the Officers would have created a risk to her life. Briefly seizing her and bringing her in for an expert evaluation was reasonable in light of that potential risk.").

Although threats of suicide alone may not justify arrest, courts have generally found qualified immunity, or probable cause, where the person takes concrete steps toward suicide. *See*, *e.g.*, *Simenson v. City of Joliet,* No. 18-CV-00608, 2019 WL 3716868, at *6 (N.D. Ill. Aug. 7, 2019) ("The 911 call matched to Plaintiff's description, Plaintiff's physical location next to the suicide 'hot spot,' the evidence of his excessive alcohol consumption, and subsequent agitation all weigh in favor of finding Officer Crowley's seizure objectively reasonable."); *Rusinowski v. Vill. of Hillside*, 19 F. Supp. 3d 798, 807-08 (N.D. Ill. 2014) (finding probable cause where police "viewed a live feed of [the plaintiff] . . . and confirmed that [he] was waving guns around and drinking . . . [T]hose corroborating facts entitled Chief Lukaszek to credit" a friend's report that the plaintiff was

---

voluntarily, and accordingly may not rely on that allegation in opposing summary judgment. Fed. R. Civ. P. 56(c)(1),(e).

suicidal).

In this case, Plaintiff took steps toward suicide that could have led a reasonable officer to think an arrest was necessary. Specifically, Plaintiff drove to the Dan Ryan Expressway, having threatened to kill himself by getting into a car crash on the Expressway. *See Simenson*, 2019 WL 3716868 at \*6 (finding that presence at suicide "hot spot" supported probable cause). That distinguishes this case from *Bruce v. Guernsey,* 777 F.3d 872 (7th Cir. 2015), which Plaintiff cites for the proposition that the "possibility" of suicide does not justify arrest for a mental evaluation. In *Bruce*, the only evidence of danger was a "potentially unreliable tip from [an] ex-boyfriend" that the plaintiff had threatened suicide the night before. 777 F.3d at 877. The Seventh Circuit Court of Appeals found that summary judgment on a false arrest claim against one of the two officers was not appropriate, in part because the officer made "several material falsehoods" that led to the plaintiff being held in custody longer than she should have. *Id*. at 878. In this case, there was stronger evidence that Plaintiff was suicidal, including Plaintiff's own actions, and no evidence that the officers acted dishonestly in concluding that he should be evaluated.

Although Plaintiff notes that four hours passed between the suicidal threats and the arrest, courts have typically declined to place the burden on police to determine that a suicidal threat is no longer urgent. In *Sutterfield v. City of Milwaukee*, 751 F.3d 542 (7th Cir. 2014), the Seventh Circuit Court of Appeals held that a warrantless entry into a person's home based on a threat of suicide nine hours prior was justified, in part because of the difficulty in judging when that kind of threat has dissipated. 751 F.3d at 562-63 ("To say, as Sutterfield does, that given the passage of time and her own assurances to the officers that she was fine, that there was no longer any emergency, and that the officers should have heeded her demands that they leave, is to engage in the very sort of

second-guessing that we eschewed in [prior cases]. How were the officers to know that Sutterfield was competent to assess the state of her own mental health or that, regardless of what she herself said, there was no longer any risk that she might harm herself? Only a medical professional could make that judgment."); *see also Dunne*, 2013 WL 617077 at *3 ("Most people facing involuntary hospitalization deny that they need medical attention; if a simple denial were enough, probable cause would never exist."). For the same reasons, the fact that Ayersman had planned to arrest Plaintiff before arriving on the scene is not dispositive, if he reasonably believed the threat was real. *See Bloom*, 840 F. Supp. 2d at 1064-65, 1068 (dismissing claim of false arrest of a minor despite allegations that officers "agreed . . . to take her to the hospital" before entering the home, and police arrested her despite finding "no knife and no signs of disturbance"). Accordingly, Defendants Ayersman and Wells are entitled to qualified immunity on the false arrest claim.

B.      Excessive Force

When a plaintiff alleges excessive force during an arrest, the officer's conduct is assessed using the Fourth Amendment's "reasonableness" standard. A police officer's use of force is unconstitutional if "judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 486 (7th Cir. 2011). The nature and extent of the force that constitutes "reasonable" force depends on the specific circumstances of the arrest, including the severity of the crime, the threat posed to the officers, and whether the suspect is trying to resist or flee. *Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir. 2015); *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012).

In this circuit, it is well-established that officers cannot use "significant force" on a nonresisting or passively resisting suspect. *Becker v. Elfreich*, 821 F.3d 920, 927 (7th Cir. 2016);

10

*Abbott*, 705 F.3d at 732; *Phillips*, 678 F.3d at 529 (7th Cir. 2012). "Passive resistance" includes failing to comply with a verbal command. *Becker*, 821 F.3d at 927 (failure to obey command to get on the ground was passive resistance); *Abbott*, 705 F.3d at 730 (failure to turn over on the ground was not active resistance); *Smith v. Ball State Univ.*, 295 F.3d 763, 770-71 (7th Cir. 2002) (plaintiff who failed to exit vehicle on command was "not actively resisting").

In this case, Plaintiff initially resisted arrest by pushing Ayersman. (In Plaintiff's words, he "instinctively tried to remove [Ayersman's hands from his chest to create] an inch of space between his hands and [Plaintiff's] body." Michael Comandella Dep. 54:4-12 [DE 52].) He was actively, rather than passively, resisting. The officers were therefore entitled to use appropriate force to secure him, including taking him to the ground. *See, e.g., Smith*, 295 F.3d at 766-771. In *Smith*, two officers "forcibly removed" the unresponsive plaintiff from a vehicle, a third officer tried to "apply a knee strike to [his] leg," and the three officers "held [his] face to the ground and handcuffed him," leaving him with "scratches and bruises on his face, marks on his wrists from the handcuffs and a marble-sized bump on his head." *Id*. at 766-67. The Seventh Circuit Court of Appeals concluded that this was "minimal" force, reasonable even though the plaintiff was not actively resisting. *Id*. at 771. By this standard, the fact that the officers forcefully took Plaintiff to the ground does not show that their conduct was excessive.

It is undisputed that, once on the ground, Plaintiff refused at least one request from the officers to show them his hands. Defendants state that, at that point, Plaintiff was being "[kept] in place" by the officers. Brief in Support of Motion at 14 [DE 51]. He was no longer pushing anyone; his only resistance was to disobey the officers' verbal request to show his hands. On these facts, he was now passively, rather than actively, resisting. *Becker*, 821 F.3d at 927 (non-compliance with

11

a verbal command is passive resistance). Nonetheless, when he did not show his hands, Wells shot Plaintiff in the back with a Taser. With Plaintiff subdued, the officers were no longer entitled to use "significant force"; therefore, a reasonable jury could find that deploying a Taser[3] on Plaintiff while he was being held face-down on the ground was excessive. *See Miller v. Gonzalez*, 761 F.3d 822, 829 (7th Cir. 2014) ("This prohibition against significant force against a subdued suspect applies notwithstanding a suspect's previous behavior—including resisting arrest."); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010) ("[A]s the threat changes, so too should the degree of force . . . once Cyrus was on the ground, unarmed, and apparently unable to stand up on his own, the risk calculus changed. Or so a jury might reasonably conclude."); *Phillips*, 678 F.3d at 527 ("Permitting substantial escalation of force in response to passive non-compliance would be incompatible with our excessive force doctrine and would likely bring more injured citizens before our courts.").

Plaintiff's injuries also suggest an issue of material fact as to excessive force. Most significantly, Plaintiff alleges that he sustained a torn medial collateral ligament and torn meniscus in his left knee. Plaintiff's allegations about the cause of those injuries – that the officers "disabled" his leg by hitting him in the left kneecap – do not by themselves demonstrate excessive force, since the officers were entitled to take Plaintiff to the ground. However, Plaintiff has sufficiently identified the "specific conduct" that he says caused those injuries that a reasonable jury could find they support a finding of excessive force. *See Cyrus*, 624 F.3d at 864 (holding that excessive force cannot be found solely on the fact that an injury occurred; the plaintiff must "identif[y] the specific

---

[3] The use of a Taser on a passively resisting suspect is significant force. *Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018) ("[A]n officer may not use significant force (like a Taser) against a 'nonresisting or passively resisting' subject.") (quoting *Abbott*, 705 F.3d at 732).

conduct" he contends was excessive); *Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) (holding that the extent of injury is a "relevant factor" in determining excessive force).

In addition, Plaintiff was not committing a crime when he was arrested, and even if he was a potential danger to himself, he was not a danger to the officers or to others. Those factors weigh in favor of excessive force. *See Williams v. Indiana State Police Dep't*, 797 F.3d 468, 484-45 (7th Cir. 2015) (denying qualified immunity where the plaintiff "posed a potential threat to himself, but there were no facts indicating that he was a threat to others."); *Todero v. Blackwell*, 383 F. Supp. 3d 826, 835–36 (S.D. Ind. 2019) ("Danger to only a suspect cannot justify force in the same way that danger to others can."). Defendants point to a 2009 incident[4] in which Plaintiff reportedly threatened to "hurt" his mother as helping to justify the force the police used. But no attempt of violence emerged from that 2009 incident, and – other than Plaintiff's initial push of Ayersman – there was no threat of violence to others during this incident. Ultimately, a reasonable jury could find that the force used in this case was excessive.

Defendants argue that, even if the force they used was unreasonable, Ayersman and Wells are entitled to qualified immunity on the excessive force claim. To defeat qualified immunity on an excessive force claim, a plaintiff must either point to a closely analogous case that established a right to be free from the type of force in question, or show that the force was so plainly excessive that, as an objective matter, the officer would have been on notice that he was violating the Fourth Amendment. *Weinmann*, 787 F.3d at 450 (citing *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013)); *Chelios*, 520 F.3d at 691 (citing *Clash v. Beatty*, 77 F.3d 1045, 1047-48 (7th Cir. 1996)). In

---

[4] Plaintiff asks that the police report of this incident be disregarded as irrelevant and states that "there is no evidence that the officers involved were even aware" of the incident. Since the report lists Defendant Ayersman as the "reporting officer," Motion Ex. H at 5 [DE 52], the Court accepts the evidence as relevant.

short, qualified immunity is a valid defense if a reasonable officer "could have believed [the arrest] to be lawful, in light of clearly established law." *Abbott*, 705 F.3d at 714 (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). If there is no controlling precedent, the Court must determine "whether there was such a clear trend in the case law . . . that the recognition of the right by a controlling precedent was merely a question of time." *Phillips*, 678 F.3d at 528 (citing *Estate of Escobedo v. Butler*, 600 F.3d 770, 781 (7th Cir. 2010)); *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000).

No party has pointed to a closely analogous case. However, it is clearly established law that (1) a suspect who disobeys a verbal command is engaged in "passive resistance"; (2) officers cannot use "significant force" on a passively resisting suspect; (3) even if significant force was previously justified, an officer may not continue to use significant force once a suspect is subdued. *See supra*, p. 10-12. Therefore, assuming Plaintiff's version of the facts for purposes of this motion, qualified immunity is not a defense for Ayersman or Wells.

C.      Liability of the Town of Munster

Plaintiff's Complaint asserts that the Town of Munster is liable on theories of *respondeat superior* and negligent hiring and training. Defendants seek summary judgment on these claims. A single incident of unconstitutional activity does not sustain municipal liability unless it can be attributed to an unconstitutional municipal policy. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). To proceed on a theory of inadequate training, the plaintiff must show that the municipality was deliberately indifferent to the potential for constitutional violation in its training, or that it failed to provide further training after a "pattern" of constitutional violations by the police. *Dunn v. City of Elgin, Illinois*, 347 F.3d 641, 646 (7th Cir. 2003). Although the Complaint is unclear

as to whether there is a distinct claim for negligent hiring, Indiana state law provides for a cause of action based on negligent hiring where "an employee 'steps beyond the recognized scope of his employment to commit a tortious injury upon a third party'." *Fier v. Town of N. Judson, Indiana*, No. 3:18-CV-425 JD, 2019 WL 1098980, at \*5 (N.D. Ind. Mar. 8, 2019) (quoting *Bd. of Sch. Comm'rs of City of Indianapolis v. Pettigrew*, 851 N.E.2d 326, 332 (Ind. Ct. App. 2006).

Defendant argues that Plaintiff has no evidence that the Town has a policy that promotes false arrest or excessive force, and no evidence that the Town was negligent in hiring or training its officers. Plaintiff did not respond to the arguments or present any evidence. Plaintiff's claims are therefore waived. *Todd v. Lake Cty. Sheriff's Dep't*, No. 2:08 CV 314, 2013 WL 2156470, at \*8 (N.D. Ind. May 17, 2013) (citing *Palmer v. Marion Cty.*, 327 F.3d 588, 597 (7th Cir.2003); *Laborers Int'l Union of N. Amer. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir.1999)).

## V.    Conclusion

For the foregoing reasons, the Court hereby **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment [DE 50]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendants as to Count I of Plaintiff's Complaint (false arrest). Count II (excessive force) remains pending. Plaintiff may not proceed on any theory of *respondeat superior* or negligent hiring or training against Defendant Town of Munster. Because no allegations remain pending against it, the Town of Munster is **DISMISSED** from this action.

So ORDERED this 9th day of March, 2020.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record